NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**THINK PRODUCTS, INC.,**
*Appellant*

**v.**

**ACCO BRANDS CORPORATION, ACCO BRANDS USA LLC,**
*Appellees*

---

2017-1360, 2017-1361

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2015-01167, IPR2015-01168.

---

Decided: February 14, 2018

---

EDWIN DAVID SCHINDLER, Huntington, NY, argued for appellant. Also represented by JOHN FRANCIS VODOPIA.

MICHAEL R. WEINER, Marshall, Gerstein & Borun LLP, Chicago, IL, argued for appellees. Also represented by THOMAS LEE DUSTON, TRON Y. FU, SANDIP PATEL.

---

Before LOURIE, CHEN, and HUGHES, *Circuit Judges.*

CHEN, *Circuit Judge*.

Think Products, Inc. (Think Products) appeals the final written decisions of the Patent Trial and Appeal Board (Board) in inter partes review proceedings on U.S. Patent Nos. 8,717,758 (the '758 patent) and 8,837,144 (the '144 patent). The '758 patent and the '144 patent, which share the same specification, disclose security locking devices for portable electronics, e.g., laptop computers. ACCO Brands Corporation and ACCO Brands USA LLC (collectively, ACCO) filed petitions for inter partes review of claims 1–7, 9–14, and 16 of the '758 patent and claims 1–12 and 14–20 of the '144 patent (the challenged claims). After instituting review, the Board ultimately held all of the challenged claims to be unpatentable as anticipated as well as obvious. For the reasons below, we agree with the Board's claim construction and affirm its obviousness determination.[1]

## BACKGROUND

The challenged claims are directed to a locking assembly comprising two elements: a "captive security rod" and a "locking device." One end of the captive security rod is anchored to the portable electronic device which the user desires to secure against theft. The other end of the captive security rod is inserted into the locking device, which securely grasps that end. The locking assembly is then connected to a "substantially immovable object," such as a table. The captive security rod is depicted as element **291** of a laptop computer in Fig. 30 of the shared specifications:

---

[1]    Because we affirm the Board's determination of obviousness which renders unpatentable all of the challenged claims, we need not reach the Board's determination of anticipation, which constitutes an alternate ground of unpatentability.



FIG. 30

'758 patent drawing sheet 24. Both the '758 patent and the '144 patent contain apparatus and method claims. Claim 1 of the '758 patent is representative of the claims of both patents:[2]

> **1.** A locking assembly for securing a portable electronic device having at least one housing to a substantially immovable object, the locking assembly comprising:
>
> a captive security rod having a locking end and an anchoring end, wherein the anchoring end is passed through the at least one housing to anchor the captive security rod thereto;

---

[2]    The challenged claims also include substantially similar method claims. On appeal, Think Products argues all claims together and they thus rise and fall together. *See In re Kaslow,* 707 F.2d 1366, 1376 (Fed. Cir. 1983).

said captive security rod partially in said at least one housing and partially out of said at least one housing during and before locking use; and

a locking device with a locking mechanism, wherein the locking device is configured with an opening to receive the locking end of the captive security rod to activate the locking mechanism, where the activation causes the locking mechanism to securely grasp the locking end and thereby lock the security rod and portable electronic device to the locking device.

'758 patent col. 19, ll. 18–34.

The Board construed the term "captive security rod" as "a rod-shaped portion of a locking assembly, wherein the rod-shaped portion is anchored to a portable electronic device." J.A. 15. In so doing, the Board relied on the specification's discussion of "the captive security rod and portable electronic device to which the captive security rod is anchored," '758 patent col. 5, ll. 23–25, and an embodiment in which the captive security rod was "fixedly inserted through a surface of [the device] housing," *id.* col. 6, ll. 21–22. The Board also rejected Think Products's argument that components which are not anchored to the portable electronic device during non-locking use but are attached to the device as part of the locking process are captive security rods. The Board found this argument inconsistent with the above statements from the specification that the captive security rod is "anchored" and with Fig. 30, which shows that the captive security rod 291 is securely bonded to the device. In addition, the Board noted that during prosecution, Think Products distinguished a prior art reference on the grounds that the reference's "rectangular T-shaped locking member 124 is stored out of the housing 137 during non-use and between deployments." J.A. 14.

The Board then held the challenged claims to be unpatentable as obvious over the combination of prior art references U.S. Patent Nos. 6,360,405 (McDaid) and 5,829,280 (Chen). McDaid is directed to "an anchor/tether assemblage for use with the security slot found on many portable electronic devices." McDaid col. 1, ll. 57–58. Specifically, McDaid discloses (i) an anchor rod which is securely attached to the electronic device; and (ii) a tether with a locking device which locks onto that anchor rod by use of a key:



J.A. 25 (Board's concatenation of separate figures from McDaid); *see also* McDaid col. 7, ll. 23–40. Chen is directed to an easy-use bicycle lock including "a cable locking device . . . which allows the unlocked cable to be inserted into and locked by the locking device without having to use the key of the locking device." Chen col. 1, ll. 57–60.

The Board found that McDaid and Chen, taken together, disclose all the limitations of the challenged claims. Specifically, the Board found that McDaid disclosed all the limitations of the challenged claims except that McDaid's locking action occurs by using a key rather

than by insertion, and that Chen taught insertion locking for similar cable locking assemblies. The Board also found that a skilled artisan would have been motivated to combine McDaid and Chen because the artisan would have known that automatically activated insertion locks have advantages over key-activated locks and that Chen's automatic lock was suitable for use in McDaid's locking assembly. Think Products argued in response that McDaid's locking assembly prevents all rotation of the locking head about the captive security rod and that a skilled artisan would thus have been dissuaded from combining Chen's freely rotatable lock with McDaid's locking mechanism.

The Board disagreed, holding that the embodiment depicted in Figure 2 of McDaid allowed rotation. In particular, the Board relied on the statement with regard to the alternate embodiment of Figure 4 that "[w]ith this configuration, the locking head 104 will not rotate relative to the anchor 20," to infer that other embodiments, such as figure 2, "permit[] rotation." J.A. 28–29; McDaid col. 6, ll. 20–21. The Board further noted that the testimony of Think Products's expert "fail[ed] to explain adequately why a person of ordinary skill in the art would understand from McDaid's disclosure [] that the embodiment of Figure 2 does not permit rotation"—i.e., that there was nothing in the record before the Board to show that Figure 2 did not rotate. J.A. 29. Thus, the Board held that McDaid did not teach away from a combination with Chen and that all of the challenged claims would have been obvious over the two references.

## DISCUSSION

We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A). We review "Board decisions using the standard set forth in the Administrative Procedure Act." *Pride Mobility Prod. Corp. v. Permobil, Inc.*, 818 F.3d 1307, 1313 (Fed. Cir. 2016). We set aside the decisions of the Board only if

they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." *Id.* "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938).

## I. Claim Construction of "Captive Security Rod"

The Board is charged with construing claims in accordance with the broadest reasonable interpretation consistent with the specification. *Cuozzo Speed Techs., LLC v. Lee,* 136 S. Ct. 2131, 2142 (2016). Claim construction is an issue of law reviewed de novo, with any underlying factual determinations made by the Board reviewed for substantial evidence. *Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*, 878 F.3d 1336, 1341 (Fed. Cir. 2018).

On appeal, Think Products disputes the Board's construction for "captive security rod" and instead advances the broader construction "rod-shaped portion of a locking assembly." This construction, however, is not a reasonable one consistent with the specification. As an initial matter, the plain meaning of "captive" refers to a more solid connection than being connected and disconnected periodically. Consistent with this meaning, the claims at issue describe the captive security rod's "anchoring end" as "passed through the [portable electronic device's] housing to anchor the captive security rod thereto." *See, e.g.*, '758 patent claim 1, col. 19, ll. 18–34. The claim language further describes the captive security rod as "partially in" the housing "during and before locking use." *Id.* The claims thus indicate that the "anchoring end" of the captive security rod is anchored to the portable electronic device housing at all times. Similarly, the specification consistently describes the captive security rod as having "an anchoring end" used "to anchor the captive

security rod" to the housing. '758 patent col. 5, ll. 13–16; *see also id.* col. 5, ll. 22–25 (referring to the "captive security rod and portable electronic device to which the captive security rod is anchored"); *id.* col. 5, ll. 34–36 ("The locking end of the captive security rod operates to collapse into the at least one housing during non-use."). The intrinsic description of the specification and claims thus cabins the term "captive security rod" to a structure which is securely anchored to the housing of the portable electronic device.

Furthermore, as the Board noted in its final written decisions, the specification explains that the captive security rod embodiment is a "replacement" for the "separate spike 285." '758 patent col. 14, ll. 28–29. The necessary implication is that reasonable constructions of "captive security rod" cannot be so broad as to sweep in "separate spike 285," a structure from which the captive security rod was explicitly distinguished. And in the prosecution history, Think Products explained in response to a rejection over prior art that "[i]n contrast [to the prior art,] in Applicant's amended independent Claims 1 and 22, the locking rod is partially stored in the computer housing during non-use . . . ."[3] J.A. 1277. A reasonable

---

[3]    Think Products argues that the statements in the prosecution history distinguishing the prior art should not have been considered by the Board because they relate to the relationship between various elements of the locking mechanism, not whether the captive security rod is stored in the housing. We disagree. Think Products traversed a prior art rejection by stating that the prior art rod "is stored out of the housing 137 during non-use and between deployments," that "[i]n contrast . . . [Think Products's] locking rod is partially stored in the computer housing during non-use," and that on this basis, Think Products's "amended Claim 1 and 22 are distinguishable from [the

construction of captive security rod thus may not be so broad as to capture structures which become anchored in the housing only as part of locking use.  Thus we agree with the Board that the broadest reasonable construction of "captive security rod" must include limitations which require the captive security rod to be anchored in the housing prior to locking use, and we find the Board's construction to be legally proper and supported by substantial evidence.

Think Products also argues that the Board's construction improperly imports the structural limitation of a "portable electronic device" into the definition of a "captive security rod."  Think Products argues that this is an example of improper "inferential claiming," i.e., importing limitations into the claim which are not originally present in it.  We disagree for several reasons.  First, and most importantly, the Board's construction does not state that the captive security rod *is* a portable electronic device or *includes* a portable electronic device but merely that it is *anchored to* a portable electronic device.  Second, as discussed above, the Board's construction does not read in an additional limitation but merely gives full effect to the claims as written, consistent with the specification.  Here, the "housing" of the "portable electronic device" is a limitation of all the challenged claims, given that the claims recite that the captive security rod is "in" the portable electronic device housing during and before locking use "to anchor the captive security rod thereto."

---

prior art]."  Think Products thus adopted the position that the captive security rod is stored in the housing in order to traverse the prior art, and it will be held to this position in subsequent proceedings and litigation.  *See Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008).

Thus, Think Product's inferential claiming argument is unavailing.

## II. Obviousness over McDaid and Chen

When reviewing the Board's determination of obviousness, we "review de novo the ultimate determination . . . and compliance with legal standards, and we review underlying factual findings for substantial evidence." *Pride Mobility*, 818 F.3d at 1314. A patent claim is unpatentable when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a).[4] Obviousness "is a question of law based on underlying findings of fact." *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000).

On appeal, Think Products contests only the Board's finding that McDaid did not teach away from combination with Chen. Think Products argues here, as before the Board, that the embodiment of Figure 2 of McDaid, like that of Figure 4, does not allow rotation. However, Think Products cites nothing in the record, whether statements from the prior art or expert testimony, to support this understanding of Figure 2. *See, e.g.*, Appellant's Br. 50. The Board (1) reasonably inferred from the disclosure

---

[4]    Congress amended § 103 when it passed the Leahy-Smith America Invents Act ("AIA"). Pub. L. No. 112-29, § 3(c), 125 Stat. 284, 287 (2011). However, because the applications that led to the '758 and '144 patents never contained (1) a claim having an effective filing date on or after March 16, 2013 or (2) a reference under 35 U.S.C §§ 120, 121, or 365(c) to any patent or application that ever contained such a claim, the pre-AIA § 103 applies. *See id.* § 3(n)(1), 125 Stat. at 293.

that Figure 4 did not permit rotation that other embodiments may permit rotation, (2) reasonably concluded that the structure of Figure 2 appears susceptible to rotation, and (3) correctly noted that nothing in the record, including the testimony of Think Products's expert, indicates that the embodiment of Figure 2 does not permit rotation. Thus, we find the Board's conclusion of obviousness to be supported by substantial evidence.

### III. Expert Credibility

Think Products also argues that the testimony of ACCO's expert was unreliable because evidence in the record supports a conclusion that ACCO's expert did not author his own expert report. Because substantial evidence in the record apart from that expert report exists to support the Board's claim construction and finding of obviousness, including the specification and claims of the patents, the file histories of the patents, and the report of Think Products's own expert, we need not reach this issue.

### CONCLUSION

We have considered all of Think Products's other arguments and find them unpersuasive. For the foregoing reasons, the final written decisions of the Board in these appeals are

**AFFIRMED**