# United States Court of Appeals for the Federal Circuit

---

**UNWIRED PLANET, LLC,**
*Appellant*

v.

**GOOGLE INC.,**
*Appellee*

---

2015-1812

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. CBM2014-00006.

---

Decided: November 21, 2016

---

WILLIAM M. JAY, Goodwin Procter LLP, Washington, DC, argued for appellant. Also represented by ELEANOR M. YOST; BRETT M. SCHUMAN, DAVID ZIMMER, San Francisco, CA.

JON WRIGHT, Sterne Kessler Goldstein & Fox, PLLC, Washington, DC, argued for appellee. Also represented by MICHAEL V. MESSINGER, JOSEPH E. MUTSCHELKNAUS, DEIRDRE M. WELLS; PETER ANDREW DETRE, Munger, Tolles & Olson, LLP, San Francisco, CA; ADAM R. LAWTON, Los Angeles, CA.

---

Before REYNA, PLAGER, and HUGHES, *Circuit Judges.*

REYNA, *Circuit Judge.*

Unwired Planet, LLC ("Unwired") appeals from the final written decision of the Patent Trial and Appeal Board ("Board") in Covered Business Method Patent Review No. 2014-00006. *Google Inc. v. Unwired Planet, LLC,* CBM2014-00006, 2015 WL 1570274 (P.T.A.B. Apr. 6, 2015) ("*CBM Final Decision*"). Because the Board relied on an incorrect definition of covered business method ("CBM") patent in evaluating the challenged patent, U.S. Patent No. 7,203,752 (the "'752 patent"), we *vacate* and *remand.*

BACKGROUND

U.S. Patent No. 7,203,752

The '752 patent is entitled "Method and System for Managing Location Information for Wireless Communications Devices." It describes a system and method for restricting access to a wireless device's location information. The specification describes a system that allows users of wireless devices (e.g., cell phones) to set "privacy preferences" that determine whether "client applications" are allowed to access their device's location information. '752 patent col. 1 ll. 60–65. The privacy preferences used to determine whether client applications are granted access may include, for example, "the time of day of the request, [the device's] current location at the time the request is made, the accuracy of the provided information and/or the party who is seeking such information." *Id.* at col. 1 l. 65 to col. 2 l. 1. "In operation, a client application will submit a request over a data network to the system requesting location information for an identified wireless communications device." *Id.* at col. 3 ll. 30–33. The system then determines, based on the user's privacy preferences, whether to provide the requested location information to a client application. *Id.* at col. 3 ll. 38–50.

Claim 25 is representative for the purposes of this appeal. It claims:

A method of controlling access to location information for wireless communications devices operating in a wireless communications network, the method comprising:

receiving a request from a client application for location information for a wireless device;

retrieving a subscriber profile from a memory, the subscriber profile including a list of authorized client applications and a permission set for each of the authorized client applications, wherein the permission set includes at least one of a spatial limitation on access to the location information or a temporal limitation on access to the location information;

querying the subscribe[r] profile to determine whether the client application is an authorized client application;

querying the subscriber profile to determine whether the permission set for the client application authorizes the client application to receive the location information for the wireless device;

determining that the client application is either not an authorized client application or not authorized to receive the location information; and

denying the client application access to the location information.

*Id.* at col. 16 ll. 18–40.

CBM 2014-00006

On October 9, 2013, Google Inc. ("Google") petitioned for CBM review of claims 25–29 of the '752 patent. *See* Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112–29, § 18, 125 Stat. 284, 329–31 (2011).[1]  On April 8, 2014, the Board instituted CBM review of all the challenged claims.  As a threshold matter, the Board reviewed whether the '752 patent is a CBM patent. *See* AIA § 18(d); 37 C.F.R. § 42.301.   The Board based its review on "whether the patent claims activities that are financial in nature, incidental to a financial activity, or complementary to a financial activity." *Google Inc. v. Unwired Planet, LLC*, CBM2014-00006, 2014 WL 1396978, at *7 (P.T.A.B. Apr. 8, 2014) ("*CBM Institution Decision*") (citing Board decisions).   After examining the '752 patent's specification, the Board found the '752 patent to be a CBM patent, reasoning:

> The '752 patent disclosure indicates the "client application" may be associated with a service provider or a goods provider, such as a hotel, restaurant, or store, that wants to know a wireless device is in its area so relevant advertising may be transmitted to the wireless device. *See* ['752 patent col. 11 ll.] 12–17.  Thus, the subject matter recited in claim 25 of the '752 patent is incidental or complementary to the financial activity of service or product sales.  Therefore, claim 25 is directed to a method for performing data processing or other operations used in the practice, administration, or management of a financial product or service.

---

[1]   Section 18 of the AIA, pertaining to CBM review, is not codified. References to AIA § 18 in this opinion are to the statutes at large.

*Id.* The Board instituted the CBM review on four grounds: (1) claims 25–29 for unpatentable subject matter under 35 U.S.C. § 101, (2) claim 26 for lack of written description under 35 U.S.C. § 112, (3) claim 25 for obviousness under 35 U.S.C. § 103 over two references, and (4) claim 25 for obviousness over a different combination of two references. *CBM Institution Decision*, 2014 WL 1396978, at *1, *4, *20–21.

The Board issued its final written decision on April 6, 2015. The Board upheld only the first ground, finding that the challenged claims were directed to unpatentable subject matter under section 101. *CBM Final Decision*, 2015 WL 1570274, at *18. Unwired appeals. Google does not cross-appeal. The only issues on appeal are whether the patents are CBM patents and whether the challenged claims are directed to patentable subject matter under section 101. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. § 329. Our jurisdiction includes review of whether the '752 patent is a CBM patent. *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1323 (Fed. Cir. 2015).

STANDARD OF REVIEW

We review Board determinations under the standards provided in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. *Pride Mobility Prods. Corp. v. Permobil, Inc.*, 818 F.3d 1307, 1313 (Fed. Cir. 2016); *Power Integrations, Inc. v. Lee*, 797 F.3d 1318, 1323 (Fed. Cir. 2015). "Under 5 U.S.C. § 706(2)(A), (E), the Board's actions here are to be set aside if 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or 'unsupported by substantial evidence.'" *Pride Mobility*,

818 F.3d at 1313.[2]   We review the Board's statutory interpretation de novo.  *Belkin Int'l, Inc. v. Kappos*, 696 F.3d 1379, 1381 (Fed. Cir. 2012).

## DISCUSSION

Unwired argues that the Board erred in applying a standard that is broader than the AIA contemplates to determine whether the '752 patent was a CBM patent.  It notes that the challenged claims themselves do not disclose or otherwise describe a financial product or service. In Unwired's view, the Board's reliance on the sections of the specification discussing ways to monetize the invention by selling advertising is improper speculation. Unwired further argues that the Board erred by looking to whether the claims are "incidental" or "complementary" to financial activity because these broad terms conflict with the AIA's limits on covered patents.

Google responds that the Board applied the correct definition of CBM patents in light of the comments the United States Patent and Trademark Office ("PTO") made during the regulatory process.  Google argues that the "Board's broad application of CBM review is well-known and has been recognized by this Court."  Google Br. 24 (citing *Versata*, 793 F.3d at 1324). Google further notes that the specification discusses using the claimed method to facilitate advertising, which would thereby facilitate financial activity.[3]  In Google's view, proposed use of the

---

[2]   When reviewing the Board's decisions pursuant to the APA, we often use the terms "abuse of discretion" and "arbitrary and capricious" interchangeably.  *Japanese Found. for Cancer Research v. Lee*, 773 F.3d 1300, 1304 n.3 (Fed. Cir. 2014).

[3]   Google also argues that the limitations of certain non-challenged claims should be considered.  It did not

claimed method in facilitating advertising is sufficient to support the Board's determination that the '752 patent is a CBM patent. We disagree.

In accordance with the statute, a CBM review is available only for a "covered business method patent," which the AIA defines as "a patent that claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service, except that the term does not include patents for technological inventions." AIA § 18(d)(1).[4]

The PTO adopted the statutory definition of CBM patents by regulation without alteration. Transitional Program for Covered Business Method Patents—Definitions of Covered Business Method Patent and Technological Invention, 77 Fed. Reg. 48,734 (Aug. 14, 2012) ("Transitional Program"). We have noted that the PTO has a "broad delegation of rulemaking authority in the establishment and implementation of" CBM review. *Versata*, 793 F.3d at 1325. "It might have been helpful if the [PTO] had used [its] authority to elaborate on its understanding of the definition [of CBM] provided in the statute." *Versata*, 793 F.3d at 1325. But the PTO did not do so, instead adopting by regulation the statutory definition of a CBM patent. 37 C.F.R. § 42.301(a).

---

raise these arguments to the Board, J.A. 81, and we decline to consider them in the first instance. *See Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 450 (Fed. Cir. 2015).

[4] The parties do not dispute whether the '752 patent is a patent for a "technological invention." *See* 37 C.F.R. § 42.301(b).

To reach its decision in this case, the Board did not apply the statutory definition.  Instead, the Board stated that the proper inquiry "is whether the patent claims activities that are financial in nature, incidental to a financial activity, or complementary to a financial activity." *CBM Institution Decision*, 2014 WL 1396978, at \*7 (citing Board cases).  The Board determined that the '752 patent was a CBM patent because the location service could involve an eventual sale of services.  The Board noted that the specification provides that "client applications may be service or goods providers whose business is geographically oriented," such as a "hotel, restaurant, and/or store." '752 patent col. 11 ll. 12–13.  These businesses may wish to know a wireless device and its user are nearby so that "relevant advertising may be transmitted to the wireless communications device." *Id*. at ll. 13–17.  The Board relied on this discussion to find that the '752 patent is a CBM patent because "the subject matter recited in claim 25 of the '752 patent is incidental or complementary to" potential sales resulting from advertising.  *CBM Institution Decision*, 2014 WL 1396978, at \*7. Indeed, the finding that sales could result from advertising related to the practice of the patent is the sole evidence the Board relied on to find that the '752 patent is a CBM patent. *See id.*; Google Br. 29–30.

It is not disputed that this "incidental" or "complementary" language is not found in the statute.[5]   The origin of this language is a statement from Senator Schumer that the PTO quoted in its response to public

[5]   By contrast, we endorsed the "financial in nature" portion of the standard as consistent with the statutory definition of "covered business method patent" in *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1340 (Fed. Cir. 2016).

comments concerning its consideration of proposed inter-pretations of the statutory definition for a CBM patent. Transitional Program (response to comment 1) (quoting 157 Cong. Rec. S5432 (daily ed. Sept. 8, 2011) (statement of Sen. Schumer) (appearing in the permanent edition of the Congressional Record at 157 Cong. Rec. 13,190 (2011))).[6]  As part of this statement on general policy about how it will act "in administering the program," the PTO response quotes a single floor comment during the Senate debate over the AIA as an example of the legisla-tive history. *Id*.  The PTO did not adopt the general policy statement through ruling making procedures.

---

[6]    The full text of comment 1 and the response is:

Comment 1: Several comments suggested that the Office interpret "financial product or service" broadly.

Response: The definition set forth in § 42.301(a) for covered business method patent adopts the definition for covered business method patent provided in section 18(d)(1) of the AIA.  In admin-istering the program, the Office will consider the legislative intent and history behind the public law definition and the transitional program itself. For example, the legislative history explains that the definition of covered business method patent was drafted to encompass patents "claiming activ-ities that are financial in nature, incidental to a financial activity or complementary to a financial activity." 157 Cong. Rec. 13,190 (2011) (statement of Sen. Schumer).  This remark tends to support the notion that "financial product or service" should be interpreted broadly.

General policy statements, however, are not legally binding and, without adopting a policy as a rule through rulemaking, an "agency cannot apply or rely upon a general statement of policy as law." *Pac. Gas & Elec. Co. v. Fed. Power Comm'n*, 506 F.2d 33, 38 (D.C. Cir. 1974); *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n.31 (1979) (suggesting that general statements of policy "do not have the force and effect of law"); *Hamlet v. United States*, 63 F.3d 1097, 1105 n.6 (Fed. Cir. 1995) (noting that a "substantive rule" is "far more likely to be considered a binding regulation" than a general statement of policy). Likewise, the legislative history cannot supplant the statutory definition actually adopted. *Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994) ("[W]e do not resort to legislative history to cloud a statutory text that is clear."). To the extent the PTO's response is viewed as reflecting the legislative history, "the views of a single legislator, even a bill's sponsor, are not controlling." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 752 (2012) (citing *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 118 (1980)).

The legislative debate concerning the scope of a CBM review includes statements from more than a single senator. It includes inconsistent views, some of which speak more clearly and directly on the definition than does the single statement picked by the PTO. For example, various legislators offered divergent views on whether patents on check scanning methods and apparatuses are CBM patents. Senator Kyl urged that the CBM "section grew out of concerns" with patents on technology used to "clear checks electronically," which he claimed should be covered as "products or services that are particular to or characteristic of financial institutions." 157 Cong. Rec. 3432–33 (2011) (statement of Sen. Kyl). Senator Durbin expressed concerns that the section should not cover patents on "novel machinery to count, sort, and authenticate currency and paper instruments." 157 Cong. Rec.

13,186 (2011) (statement of Sen. Durbin).  In response to those views, Senator Schumer assured that "it is not the understanding of Congress that such patents would be reviewed and invalidated under Section 18." *Id.* (statement of Sen. Schumer).  These views show clear conflict about whether methods and apparatuses used for counting money, sorting currency denominations, and authenticating financial instruments are within the definition of a CBM patent.  Equally clear is that, under the Board's current definition of the scope of CBM patents, such methods and apparatuses would be, at minimum, incidental to financial activity.  Certainly, an apparatus used to sort currency denominations, or a method directed to authenticating financial instruments, are more related to the statutory definition than the patent in this case.

Neither the legislators' views nor the PTO policy statement provides the operative legal standard.  The authoritative statement of the Board's authority to conduct a CBM review is the text of the statute. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005).  The Board is only empowered to review "the validity of covered business method patents."  AIA § 18(a)(1).  To be sure, claims that satisfy the PTO's policy statement may also fall within the narrow statutory definition. *See, e.g.*, *Blue Calypso*, 815 F.3d at 1337, 1340 (CBM patent's claim included "recognizing a subsidy" step to "*financially* induce" participant action) (emphasis in original).  But patents that fall outside the definition of a CBM patent are outside the Board's authority to review as a CBM patent.  In any event, the PTO's regulatory authority does not permit it to adopt regulations that expand its authority beyond that granted by Congress.  "Indeed, it is the quintessential function of the reviewing court to interpret legislative delegations of power and to strike down those agency actions that traverse the limits of statutory authority." *Office of Commc'n of United Church of Christ v. FCC*, 707 F.2d 1413, 1423 (D.C. Cir. 1983).

The Board's application of the "incidental to" and "complementary to" language from the PTO policy statement instead of the statutory definition renders superfluous the limits Congress placed on the definition of a CBM patent. CBM patents are limited to those with claims that are directed to methods and apparatuses of particular types and with particular uses "in the practice, administration, or management of a financial product or service." AIA § 18(d). The patent for a novel lightbulb that is found to work particularly well in bank vaults does not become a CBM patent because of its incidental or complementary use in banks. Likewise, it cannot be the case that a patent covering a method and corresponding apparatuses becomes a CBM patent because its practice could involve a potential sale of a good or service. All patents, at some level, relate to potential sale of a good or service. *See* 35 U.S.C. § 101.[7] Take, for example, a patent for an apparatus for digging ditches. Does the sale of the dirt that results from use of the ditch digger render the patent a CBM patent? No, because the claims of the ditch-digging method or apparatus are not directed to "performing data processing or other operations" or "used in the practice, administration, or management of a financial product or service," as required by the statute. AIA § 18(d); 37 C.F.R. § 42.301(a). It is not enough that a sale has occurred or may occur, or even that the specification speculates such a potential sale might occur.

---

[7] Indeed, the fundamental incentive of obtaining a patent—the right to exclude—necessarily impacts the marketplace. *See, e.g.*, *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1367–68 (Fed. Cir. 1998) (discussing the relationship between a patent owner's right to exclude and marketplace monopolies); *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 703–09 (Fed. Cir. 1992) (same).

We hold that the Board's reliance on whether the patent claims activities "incidental to" or "complementary to" a financial activity as the legal standard to determine whether a patent is a CBM patent was not in accordance with law. We do not reach the patentability of the challenged claims under section 101.

## CONCLUSION

We vacate the Board's final written decision and remand the case for a decision in the first instance, and in accordance with this opinion, whether the '752 patent is a CBM patent.

**VACATED AND REMANDED**

## COSTS

No costs.