LOURIE, Circuit Judge,
dissenting.
I respectfully dissent from the majority’s conclusion that the claims of the ’191 patent are not directed to a covered business method (“CBM”) and hence are not *1383 subject to review under AIA § 18. See Leahy-Smith America , Invents Act (“AIA”), Pub. L. No. 112-29, § 18, 125 Stat. 284, 329-31 (2011).[1]
The statute defines a CBM patent ás “a patent that claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service, except that the term does not include patents for technological inventions.” Id. at § 18(d)(1). The claims of the T91 patent are surely claims to “a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service.” Id. (emphasis added).
Claim 1 recites “[a] method comprising: transforming ... received data ... to create formatted data....” ’191 patent col. 12 11. 9-18. Claim 17 recites “[a]n authentication system comprising: an authentication processor configured to insert an authenticity key into formatted data to enable authentication of the authenticity key to verify a source of the formatted data....” Id. col. 12 11. 62-67. There can be little doubt that such claims meet the “method or apparatus for performing data processing” limitation of the statute.
They also meet the “financial product or service” language of the statute. Examination of the T91 patent makes clear that the invention is to be used in the management of a financial service. The exemplary embodiment is described, inter alia, as follows:
The customer and merchant may represent individual people, entities, or business. The bank may represent other types of card issuing institutions, such as credit card companies, card sponsoring companies, or third party issuers under contract with financial institutions ...'. The bank has a computing center shown as a main frame computer. However, the bank computing center may be implemented in other forms, such as a mini-computer, a PC server, a network set of computers, and the like.... Any merchant computer and bank computer are interconnected via a second network, referred to as a payment network. The payment network represents existing proprietary networks that presently accommodate transactions for credit cards, debit cards, and other types of financial/banking cards. The payment network is a closed network that is assumed to be secure from eavesdroppers. Examples of the payment network include the American Express®, VisaNet® and the Yeriphone® network. In an exemplary embodiment, the electronic commerce system is implemented at the customer and issuing bank. In an exemplary implementation, the electronic commerce system is implemented as computer software modules loaded onto the customer computer and the banking computing center. The merchant computer does not require any additional software to participate in the online commerce transactions supported by the online commerce system.
Id. col. 11 11. 22-67. Similarly, the ’191 patent uses “bigbank.com” as the only exemplary URL. Id. col. 1 11. 29-33, col. 8 11. 21-23. No other applications of the invention are described in the patent.
*1384 And, if there were any doubt of the use of the invention in financial management, the identity of the companies Secure Ax-' cess, LLC (“Secure Axcess”) has sued for infringement of the 191 patent should settle the matter. Their litigation pattern speaks volumes about what they believe their invention is “used” for.
Secure Axcess filed complaints alleging that the following companies infringe the 191 patent by “using” the invention: PNC Bank National Association, PNC Financial Services Group, Inc., U.S. Bank National Association, U.S. Bancorp, Bank of the West, BNP Paribas, Cantander Bank, N.A., Ally Financial Inc., Ally Bank, GE Capital Retail Bank, GE Capital Bank, General Electric Capital Corporation, General Electric Company, Raymond James & Associates, Inc., Raymond James Financial, Inc., Trustmark National Bank, Trust-mark Corporation, Nationwide Financial Services, Inc., Nationwide Corporation, Nationwide Mutual Insurance Company, Nationwide Bank, Cadence Bank, N.A., Commerce Bank, Commerce Bancshares, Inc., Santander Bank, N.A., Vanguard Group Inc., Vanguard Marketing Corporation, Charles Schwab Bank, Charles Schwab Corporation, Ocwen Financial Corporation, Orange Savings Bank, SSB, First Financial Bank National Association, First Financial Bankshares, Inc., Texas Capital Bank, N.A., Texas Capital Banc-shares, Inc., T. Rowe Price Investment Services, Inc., T. Rowe Price Associates, Inc., T. Rowe Price Group, Inc., Bank of America Corporation, Bank of America, N.A., A.N.B. Holding Company, Ltd., American National Bank of Texas, Arvest Bank Group, Inc., Arvest Bank, Austin Bankcorp, Inc., Austin Bank, Texas N.A., Bank of the Ozarks, Inc., Bank of the Ozarks, Citizens 1st Bank, Compass Banc-shares, Inc., Compass Bank, Cullen/Frost Bankers, Inc., the Frost National Bank, Diboll State Bancshares, Inc., First Bank & Trust East Texas, First Community Bancshares, Inc., First National Bank Texas, First National of Nebraska, Inc., First National Bank of Omaha, First National Bank Southwest, Sterling- Bancshares, Inc., Sterling Bank, Harris Bankcorp., Inc., Harris N.A., Intouch Credit Union, Credit Union, ING Direct Bancorp, ING Bank, FSB, North Dallas Bank & Trust Co., Zions Bancorportion, Zions First National Bank, and Amegy Bank N.A.
Moreover, at oral argument, Secure Ax-cess’s counsel, in response to a question, stated that no companies have been sued other than financial institutions. Oral Argument at 7:15-7:30, Secure Axcess, LLC v. PNC Bank N.A., No. 16-1353 (Fed. Cir. Nov. 2, 2016), available at http://www.cafc. uscourts.gov/oral-argument-recordings?-title=&field_case_number_value=2016-1353&íielcLdate_-value2% 5Bvalue% 5D% 5Bdate% 5D=&=Search.
It is true that the word “financial” does not appear in the claims. However, that fact should not decide this case. See Versata Dev. Grp., Inc. v. SAP Am., Inc., 793 F.3d 1306, 1325 (Fed. Cir. 2015) (holding that “the definition of ‘covered business method patent’ is not limited to products and services of only the financial industry, or to patents owned by or directly affecting the activities of financial institutions”); see also Blue Calypso, LLC v. Groupon, Inc., 815 F.3d 1331, 1338 (Fed. Cir. 2016) (affirming Board’s decision “declinfing] to limit application of CBM review to patent claims tied to the financial sector”); SightSound Techs., LLC v. Apple Inc., 809 F.3d 1307, 1315 (Fed. Cir. 2015) (explaining Ver-sata “foreclosed” limiting the CBM patent definition to patents “directed to the management of money, banking, or investment *1385 or credit”). As a matter of patent law, claims do not necessarily need to recite uses of products. Certainly, claims to products or apparatuses do not (note that AIA § 18(d)(1) refers to a “method or corresponding apparatus”). And, if a method claim otherwise satisfies the requirements of 35 U.S.C. § 112, it need not recite an ultimate use.
The written description of the T91 patent, in accordance with the requirements of the statute, see 35 U.S.C. § 112 (“The specification shall contain a written description of the invention, and of the manner and process of ... using it....”), tells us that the invention is to be used for financial management. See T91 patent col. 11 11. 22-67; see also id. col. 1 11. 29-33, col. 8 11. 21-23. The inventors, complying with the statute, thus told us what the invention is to be used for. The claims recite an invention used in the practice of a financial product, and the uses are described in the written description of the patent.
In my view, the Board correctly concluded that the “method and apparatus claimed by the ’191 patent perform operations used in the practice, administration, or management of a financial product or service,” in accordance with the CBM patent statutory definition. PNC Bank, N.A. v. Secure Axcess, LLC, No. CBM2014-00100, 2015 WL 5316490, at *5 (P.T.A.B. Sept. 8, 2015). It is true that the Board also used overly broad language in stating in the alternative that the “method and apparatus claimed by the T91 patent ... are incidental to a financial activity.” Id. (emphasis added). And the Board did state .that “the T91 patent claims a method or apparatus that at least is incidental to a financial activity, even if other types of companies also practice the claimed invention.” Id. at *6. But overstatement does not change the basic fact that, as the written description of the patent itself indicates, the invention is directed to a method and apparatus used in financial management, as referred to in the statute. See, e.g., Blue Calypso, 815 F.3d at 1339 n.2 (explaining the Board correctly concluded that claims referring to “an incentive program” were eligible for CBM review where the patent “repeatedly, and almost exclusively discloses ‘incentive’ and ‘incentive program’ in a financial context”) (internal citation omitted).
I do recognize that the Board’s overly broad language, ie., “incidental to a financial activity,” has now been cabined by our recently issued decision in Unwired Planet, LLC v. Google Inc., 841 F.3d 1376 (Fed. Cir. 2016). That curtailment should not cause this panel to topple over an otherwise sound decision by the Board in this case that the ’191 patent is directed to financial management. Such a decision was not based only on the forbidden language. See PNC Bank, 2015 WL 5316490, at *10 (“Having determined that the T91 patent claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service and does not fall within the exception for technological inventions, we maintain our determination that the T91 patent is eligible for a covered business method patent review.”).
The majority attempts to escape the clear purport of the invention by ranging into a discussion of the meaning of claims in patent law. Its use of language such as “on occasion,” “might be considered,” and “at least facially” pointedly overlooks the nature of the invention and the meaning of the statute. The opinion has subsections headed “A patent that claims ...” and *1386 “... a financial product or service,” but it virtually ignores the statutory language “used in the practice.” The written description clearly describes how this invention is “used in the practice” of a financial product. And, while not conclusive, the post-issuance litigation history makes the point unmistakable. To ignore that is to close one’s eyes to the obvious.
The majority disparages the clear use of this invention in the practice of a financial product or service by worrying that the CBM program would have “virtually unconstrained reach” and that “a patent would qualify [for CBM review] if it claimed a method or corresponding apparatus for performing any operations that happen to be used in ‘the practice, administration, or management of a financial product or service.’ ” The answer to such concerns' is that we need not probe the limits of the statutory language by reciting all sorts of non-financial products to show that a sensible interpretation of this statute must include what Secure Axcess itself considers a financial product. Common sense is not precluded from use in interpreting statutes and claims. Suffice it to say that the relation of this invention to the financial world is one of substantial identity compared with an incidentally-used invention like a lightbulb or ditch-digging. Cf. Unwired Planet, 841 F.3d at 1382.
I therefore respectfully dissent from the conclusion that the ’191 patent is not a CBM patent.

. Section 18 of the AIA, pertaining to CBM review, is not codified. References to AIA § 18 herein are to the statutes at large,