NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**APPLE INC., GOOGLE LLC,**
*Appellants*

**v.**

**CONTENTGUARD HOLDINGS, INC.,**
*Cross-Appellant*

**v.**

**ANDREI IANCU, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Intervenor*

---

2016-2548, 2016-2557, 2016-2559, 2016-2629

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. CBM2015-00040, CBM2015-00160.

---

Decided: July 11, 2018

---

ROBERT UNIKEL, Paul Hastings LLP, Chicago, IL, argued for all appellants. Appellant Google Inc. also

represented by ROBERT R. LAURENZI, Arnold & Porter Kaye Scholer LLP, New York, NY.

JEFFREY PAUL KUSHAN, Sidley Austin LLP, Washington, DC, for appellant Apple Inc. Also represented by THOMAS ANTHONY BROUGHAN, III, MICHAEL R. FRANZINGER; NATHANIEL C. LOVE, Chicago, IL.

TIMOTHY P. MALONEY, Fitch, Even, Tabin & Flannery, Chicago, IL, argued for cross-appellant. Also represented by PAUL HENKELMANN.

WILLIAM LAMARCA, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for intervenor. Also represented by NATHAN K. KELLEY, THOMAS W. KRAUSE, FARHEENA YASMEEN RASHEED.

───────────────

Before REYNA, BRYSON, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

Apple Inc. and Google LLC appeal from the Patent Trial and Appeal Board's decision to grant ContentGuard Holdings, Inc.'s motion to amend in a covered business method review of U.S. Patent 7,774,280. Because the Board applied the wrong legal standard to determine whether the '280 patent qualified as a covered business method, we vacate and remand for further proceedings.

I

The '280 patent relates to digital rights management (DRM) systems. DRM systems allow content owners to control how their digital works are subsequently used. For example, a DRM system might prevent downstream users from making unauthorized copies of digital works or require users to pay a fee before the system grants access to the content.

According to the '280 patent, one drawback of prior DRM systems is that content owners cannot control how their digital works are distributed unless the content owner remains a party to a transaction. For example, a publisher might authorize a distributor to provide digital content to an online retailer, who in turn sells the content to end-users. '280 patent, col. 2, ll. 26–29. In prior art systems, once the publisher gives the content to the distributor, the publisher cannot control what rights the distributor grants to parties further downstream, such as the online retailer or the end-user. *Id.* col. 2, ll. 34–42.

The '280 patent purports to solve this problem by creating a DRM with "usage rights," "meta-rights" and "state variables." According to the '280 patent, "[u]sage rights define one or more manners of use of the associated document content." *Id.* col. 2, ll. 14–16. Examples of usage rights include the right to view, use, or distribute a digital work. *Id.* col. 2, ll. 16–18. By contrast, "[m]eta-rights are the rights that one has to generate, manipulate, modify, dispose of or otherwise derive other rights. Meta-rights can be thought of as usage rights to usage rights (or other meta-rights)." *Id.* col. 5, ll. 47–49. Finally, "[s]tate variables" represent the status of rights, such as how many copies of a digital work have been distributed or viewed. *Id.* col. 7, l. 66–col. 8, l. 16.

Using the '280 patent's DRM system, a publisher can grant meta-rights that specify what usage rights its distributor can grant to downstream parties like the online retailer or the end-user. *Id.* col. 6, ll. 36–60. For example, a publisher might specify that its distributor can allow the online retailer to sell only five copies of each digital work. *Id.* col. 6, ll. 47–60. Similarly, the publisher might also specify that the online retailer can only allow end-users to view the content or to print it once. *Id.* In the disclosed system, the online retailer can only grant rights to end users that have been "predetermined and

authorized" by upstream parties like the distributor or publisher. *Id.* col. 6, ll. 36–48.

Claim 1 of the '280 patent recites:

1. A computer-implemented method for transferring rights adapted to be associated with items from a rights supplier to a rights consumer, the method comprising:

obtaining a set of rights associated with an item, the set of rights including a meta-right specifying a right that can be created when the meta-right is exercised, wherein the meta-right is provided in digital form and is enforceable by a repository;

determining, by a repository, whether the rights consumer is entitled to the right specified by the meta-right; and

exercising the meta-right to create the right specified by the meta-right if the rights consumer is entitled to the right specified by the meta-right, wherein the created right includes at least one state variable based on the set of rights and used for determining a state of the created right.

*Id.* col. 15, ll. 7–22.

Petitioners Apple Inc. and Google LLC requested covered business method (CBM) review of the '280 patent, which the Board instituted. In its institution decision, the Board determined that the '280 patent qualified as a CBM patent. After institution, ContentGuard moved to amend the '280 patent. In its final written decision, the Board cancelled original claims 1, 5, and 11 of the '280 patent, but granted ContentGuard's motion to amend by adding substitute independent claim 37. Petitioners appeal from the Board's decision to grant ContentGuard's motion to amend. ContentGuard cross-appealed and argued that

the '280 patent did not qualify as a CBM patent. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## II

Our jurisdiction allows us to review whether the '280 patent qualifies as a CBM patent. *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1323 (Fed. Cir. 2015). Whether a patent qualifies as a CBM patent is a question of law that we review de novo. *Unwired Planet, LLC v. Google Inc.*, 841 F.3d 1376, 1379 (Fed. Cir. 2016). The Board concluded that the '280 patent qualified as a CBM patent because it claimed an invention that is "incidental to" or "complementary to" financial activity. Since the Board's decision, we expressly rejected this standard in *Unwired Planet*. *Id.* at 1382. Because the Board relied on an incorrect legal standard, we vacate the Board's decision.[1]

*Unwired Planet* held that "the Board's reliance on whether the patent claims activities 'incidental to' or 'complementary to' a financial activity as the legal standard to determine whether a patent is a CBM patent was not in accordance with law." *Id.* We explained that "it cannot be the case that a patent covering a method and corresponding apparatuses becomes a CBM patent because its practice could involve a potential sale of a good or service." *Id.* Moreover "[i]t is not enough that a sale has occurred or may occur, or even that the specification

---

[1] In *Secure Axcess, LLC v. PNC Bank National Ass'n*, we held that "the statutory definition of a CBM patent requires that the patent have a claim that contains, however phrased, a financial activity element." 848 F.3d 1370, 1381 (Fed. Cir. 2017). That decision, however, has since been vacated as moot by the Supreme Court. *PNC Bank Nat. Ass'n v. Secure Axcess, LLC*, 138 S. Ct. 1982 (2018).

speculates such a potential sale might occur." *Id.* Instead, "CBM patents are limited to those with claims that are directed to methods and apparatuses of particular types and with particular uses 'in the practice, administration, or management of a financial product or service.'" *Id.* (quoting Leahy–Smith America Invents Act, Pub. L. No. 112–29, § 18(d), 125 Stat. 284, 331 (2011)).

Here, the Board applied the improper "incidental or complementary" standard to find that the '280 patent is a CBM patent. For instance, the Board observed that claim 1 recited a method for "transferring rights adapted to be associated with items from a rights supplier to a rights consumer." J.A. 11. According to the Board, the transfer of rights from a supplier to a consumer "is an activity that, at the very least, is incidental or complementary to a financial activity." *Id.* Further, the Board also relied on portions of the specification that disclose how the transfer of rights "*may require* the payment of a fee or processing by a clearinghouse." *Id.* (emphasis added). From this description, the Board reasoned that the patent is "at the very least, incidental or complementary to a financial activity." *Id.* 12.

As we explained in *Unwired Planet*, the mere possibility that a patent can be used in financial transactions is not enough to make it a CBM patent. 841 F.3d at 1382. Although the '280 patent describes embodiments where the claimed DRM system is used to monetize digital works, it also explains how the claimed invention can be used in ways that do not involve financial transactions. For instance, the specification describes how the claimed invention can manage healthcare records. '280 patent, col. 7, ll. 6–17. In one embodiment, patients can grant "meta-rights" to their hospitals, which allow their hospital to transfer specific access rights to a second hospital where the patient might need treatment. *Id.* We need not decide whether such embodiments preclude the '280 patent from qualifying as a CBM patent. Instead, we hold

only that it is not enough for the specification to describe how the invention could, in some instances, be used to facilitate financial transactions.

Petitioners and the Patent and Trademark Office, as intervenors, argue that the Board also determined the claims are "financial in nature" in its final written decision. Accordingly, petitioners and the Patent and Trademark Office maintain that we can sustain the Board's determination on that alternative ground. However, references to the "incidental to" or "complementary to" standard appear throughout the Board's final written decision. *See, e.g.*, J.A. 7–8, 11, 12. On the record before us, we are unable to discern whether the Board would have concluded that the '280 patent qualifies as a CBM patent had it not applied this standard. On remand, the Board must determine whether the '280 patent qualifies as a CBM patent in the first instance without relying on the "incidental to" or "complementary to" standard.

### III

Because the Board applied an erroneous legal standard, we vacate the Board's determination that the '280 patent qualifies as a CBM patent and remand for further proceedings.

**VACATED AND REMANDED**