NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**RAMZI KHALIL MAALOUF,**
*Appellant*

**v.**

**MICROSOFT CORPORATION,**
*Appellee*

———————————

2022-1164

———————————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2020-00483.

———————————

Decided: February 23, 2023

———————————

BRIAN MEDICH, Dunlap Bennett & Ludwig PLLC, Washington, DC, argued for appellant. Also represented by ROBERT GREENSPOON, Chicago, IL.

DERRICK WADE TODDY, Klarquist Sparkman, LLP, Portland, OR, argued for appellee. Also represented by J. CHRISTOPHER CARRAWAY, SARAH ELISABETH JELSEMA, ANDREW M. MASON.

———————————

Before PROST, REYNA, and STARK, *Circuit Judges*.

STARK, *Circuit Judge*.

Ramzi Khalil Maalouf ("Maalouf") appeals the Patent Trial and Appeal Board's ("Board") final written decision in an *inter partes* review ("IPR"), finding claims 29 and 37 of U.S. Patent No. 9,503,627 B2 ("'627 patent") unpatentable as obvious. Because the Board did not err in its claim construction or ultimate legal conclusion of obviousness, its underlying factual findings are supported by substantial evidence, and its analysis is sufficient for our review, we affirm.

I

Maalouf is a co-inventor of the '627 patent, which generally concerns a handle for a handheld terminal, such as a mobile phone. Figure 4 of the patent shows an embodiment of the invention, particularly noting the handheld terminal (11) and handle (10):



J.A. 43. Figure 3 shows the invention from another angle, without the handheld terminal but pointing out the slot sliding plate (9), which may be adjusted so the invention may hold differently sized mobile phones:



FIG. 3

J.A. 43.

Claims 29 and 37 are reproduced below:

29. A handheld device to wirelessly operate a camera of a mobile device, wherein the handheld device comprises:

a holder that, during use, holds the mobile device; and

a handle apparatus coupled to the holder, wherein the handle apparatus comprises:

a command key that, during use, is selectable and corresponds to a camera feature of the mobile device,

wherein the command key is positioned on the handle apparatus such that a user is able to, with one hand, both hold the handle apparatus and select the command key;

a wireless interface module that, during use, provides a wireless connection to the mobile device,

wherein remote control of the camera feature of the mobile device is provided over the wireless connection; and

a command key module that, during use, provides, via the wireless connection, a control command to the mobile device such that the control command indicates to the mobile device to perform the camera feature, wherein the command key is one of a plurality of command keys positioned on the handle apparatus, and wherein each of the plurality of

command key corresponds to a respective command.

37.  The handheld device of claim 29, wherein the holder, during use and using the sliding member, adjusts to hold mobile phones of various sizes.

J.A. 47 ('627 patent at 7:3-27, 8:21-23).

After reviewing a petition from Microsoft Corporation ("Microsoft"), the Board instituted IPR of claims 29 and 37 on three grounds and, ultimately, issued a final written decision based on those same three grounds, concluding: (1) claim 29 would have been obvious in light of U.S. Patent Application Publication No. 2013/0005401 ("Rosenhan"); (2) claim 37 would have been obvious in light of Rosenhan and WIPO Publication No. 2012/096433 ("Kim"); and (3) claims 29 and 37 would have both been obvious in light of U.S. Patent No. 7,684,694 ("Fromm"), WIPO Publication No. 2012/018405 ("Fenton"), and U.S. Patent Application Publication No. 2011/0058052 ("Bolton").

The Board based its decision on the arguments and evidence supplied by the parties, including a declaration from Microsoft's expert, Eric Welch.  In connection with the parties' dispute over the proper construction of the claim term "remote control," the Board did not limit claim 29 to a "non-fixed" implementation during use – in which the mobile device is not held by the invention's holder.  Relatedly, the Board found Rosenhan provided remote control via wireless connection as required by claim 29's remote control element, regardless of whether a fixed or non-fixed implementation is utilized.

The Board further concluded that Kim disclosed a sliding member that adjusts to hold differently sized phones and that Microsoft had demonstrated by a preponderance of the evidence that a skilled artisan would have had reason to combine Rosenhan and Kim to disclose the limitations recited in claim 37, by modifying Rosenhan's mounting structure to include Kim's adjustable phone

mount to accommodate commercially available smartphones and their diverse form factors. Finally, the Board concluded a skilled artisan would have been motivated to combine Fromm, Fenton, and Bolton such that claims 29 and 37 would have been obvious.

Throughout its analysis, the Board variously summarized Microsoft's evidence, noted where Maalouf had failed to present any contrary evidence and where the Board had already rejected Maalouf's arguments at the institution stage, and stated it was crediting Microsoft's position. Maalouf timely appealed the Board's decision. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

II

We review the Board's factual findings for substantial evidence and its legal conclusions de novo. *See Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1039 (Fed. Cir. 2017). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

We review the Board's claim construction based on intrinsic evidence de novo. *See Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 808 (Fed. Cir. 2021). We review the Board's obviousness determination de novo and its underlying factual findings, including whether there was a motivation to combine, for substantial evidence. *See Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1366 (Fed. Cir. 2016). In addition:

> We review the Board's IPR decisions to ensure that they are not arbitrary, capricious, an abuse of discretion, . . . otherwise not in accordance with law . . . [or] unsupported by substantial evidence.

> Critically, in order to allow effective judicial re-
> view, . . . the agency is obligated to provide an ad-
> ministrative record showing the evidence on which
> the findings are based, accompanied by the
> agency's reasoning in reaching its conclusions. . . .
> The Board, as an administrative agency, must ar-
> ticulate logical and rational reasons for [its] deci-
> sion[ ].

*Pers. Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 992 (Fed. Cir. 2017) (internal quotation marks and citations omitted).

### III

Maalouf raises several issues on appeal. We deal with each in turn.

### A

First, we reject Maalouf's Appointments Clause challenge, which seeks vacatur because the Commissioner of Patents acted here, rather than the Director of the U.S. Patent and Trademark Office. As Maalouf recognized in his Opening Brief, the same issue was presented in a separate case, which we have since decided. *See Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328 (Fed. Cir. 2022) (rejecting same argument). Maalouf's Appointments Clause challenge, then, necessarily fails.

### B

Second, and contrary to Maalouf's arguments, the Board did not err by failing to construe "remote control" in a manner that would limit it to a non-fixed mode, in which the invention's holder does not hold the mobile device. In determining that "claim 29 is not limited to a 'non-fixed' implementation in which the mobile device is not held by the holder during use," the Board correctly focused on the claim language itself. J.A. 15. We agree with the Board that because the claim recites a holder that holds the mobile device during use, as well as a "wireless interface

module that, during use, provides a wireless connection to the mobile device, wherein remote control of the camera feature of the mobile device is provided over the wireless connection," the claim cannot be viewed as limited to a non-fixed implementation during use. *See* J.A. 47 ('627 patent at 7:5-6, 7:14-18). This conclusion is based on the ordinary and customary meanings to a skilled artisan of the claim terms "during use" and "hold," meanings that are readily apparent and do not require elaborate interpretation. *See, e.g.*, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-15 (Fed. Cir. 2005) (en banc). Notably, Maalouf offers no alternative interpretation of these terms and no argument directly addressing them.

Instead, Maalouf asserts that the specification defines "remote control" as limited to non-fixed embodiments, pointing to this statement in particular: "In certain embodiments, remote control operations can also be performed (for example, a non-fixed mode)." J.A. 44 ('627 patent at 2:31-33). The problem for Maalouf, however, is that this statement is self-evidently *exemplary* and not *definitional*, as it expressly refers only to "certain embodiments" and "for example" a non-fixed mode. The Board properly declined to import a portion of an exemplary embodiment from the specification into the claim. *See, e.g.*, *Phillips.*, 415 F.3d at 1323.

Maalouf's other purported support for his narrow construction of "remote control" is that, he insists, "remote control" and "wireless connection" must have different meanings because they are different terms. Even accepting his reasoning as correct, the Board never construed these terms as having the same meaning. Instead, the Board simply declined to explicitly construe "remote control," finding claim 29 was not limited to a non-fixed implementation during use. As Microsoft explains, the patent uses "wireless connection" as a mechanism by which to provide "remote control" functionality.

In any event, even if we were to adopt Maalouf's narrower understanding of his claims, we would still affirm the Board's determination that claim 29 is obvious. As an alternative basis for its conclusion, the Board explained that even under Maalouf's construction, claim 29 is obvious in light of Rosenhan, and we agree with this conclusion as well. Maalouf contends the Board erred in finding Rosenhan disclosed non-fixed remote control, but the Board's finding is supported by substantial evidence. As the Board explained:

> Rosenhan explicitly states that "electronic connection interface 118 may comprise a wireless connection (e.g., through Bluetooth, IR, etc.) so that no physical electronic connection is needed." Thus, irrespective of whether the smartphone is connected to the handle or not, as long as the smartphone is in range of the wireless signal, Rosenhan provides remote control of the camera features over the wireless connection, as recited in claim limitation 29.B.3b [(i.e., "wherein remote control of the camera feature of the mobile device is provided over the wireless connection . . .")].

J.A. 14 (internal citation omitted), 4 (limitation 29.B.3b).[1]

C

Third, the Board did not err in finding claim 37 would have been obvious in light of Rosenhan and Kim. The Board's underlying factual findings are supported by substantial evidence, particularly the testimony of Microsoft's expert, Welch. Welch explained: "A POSITA would also be motivated to combine Kim's shaft and mounting structure

---

[1]    Maalouf did not raise his "remote control" claim construction argument with respect to claim 37 before the Board, and we decline to address it for the first time on appeal. *See, e.g.*, *Unwired Planet, LLC v. Google Inc.*, 841 F.3d 1376, 1379 n.3 (Fed. Cir. 2016).

with Rosenhan's handle to expand the compatibility of Rosenhan's handle to the many different types of mobile phones available on the market, thereby expanding the commercial application of the handle." J.A. 849. He further noted:

> In view of Rosenhan's disclosure of accommodating phones with various shapes and sizes, a POSITA would have been motivated to replace the mounting structure of Rosenhan with a more flexible mount that was capable of being used with a larger number of mobile phones having different shapes and sizes, a situation specifically identified in Rosenhan.

J.A. 846.

Maalouf faults the Board for relying on Welch's testimony because, in his view, it is merely conclusory and, therefore, inadequate. We do not agree that Welch's testimony, including the portion we have excerpted above, is conclusory. Instead, Welch clearly articulated why a skilled artisan would be motivated to combine Rosenhan and Kim, providing specific reasoning based on facts in the record, logic, and his own expertise. Maalouf's arguments to the contrary are without merit.

## D

Finally, the Board sufficiently articulated its analysis. As we have previously stated:

> The amount of explanation needed to meet the governing legal standards – to enable judicial review and to avoid judicial displacement of agency authority – necessarily depends on context. A brief explanation may do all that is needed if, for example, the technology is simple and familiar and the prior art is clear in its language and easily understood. On the other hand, complexity or obscurity of the technology or prior-art descriptions may well make more detailed explanations necessary.

*Pers. Web Techs.*, 848 F.3d at 994 (citation omitted).

Here, the Board was faced with relatively simple technology and arguments. The Board considered and rejected Maalouf's arguments, while summarizing and accepting Microsoft's arguments and the bases for them. Although a more fulsome explanation is always welcome and often necessary, in this case the Board's analysis is sufficiently discernable for purposes of our review and the strictures of administrative law. *See generally Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974) (noting we may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned").

## IV

We have considered the parties' additional arguments and find them unpersuasive or unnecessary to address.[2] For the foregoing reasons, we affirm the Board's decision.

**AFFIRMED**

COSTS

No costs.

---

[2]    For example, because we affirm the Board's decision with respect to grounds 1 (Rosenhan) and 2 (Rosenhan and Kim), we need not and do not address ground 3 (Fromm, Fenton, and Bolton).