*1004 LOURIE, Circuit Judge,
with whom PROST, Chief Judge, DYK, WALLACH, and HUGHES, Circuit Judges, join dissenting from the denial of rehearing en banc.
For reasons stated in my dissent from the panel’s decision and those that follow, I respectfully dissent from the court’s decision not to rehear this case en banc. The panel held that “the statutory definition of a [covered business method (“CBM”) ] patent requires that the patent have a claim that contains, however phrased, a financial activity element.” Secure Axcess, LLC v. PNC Bank Nat’l Ass’n, 848 F.3d 1370, 1381 (Fed. Cir. 2017) (emphasis added). However, I believe that conclusion is contrary to the statutory language, congressional intent, and our case law.
Although not every error by a panel is enbancable, the statutory interpretation question presented here certainly satisfies the requirements for en banc review, see, e.g., Suprema, Inc. v. Int’l Trade Comm’n, 796 F.3d 1338, 1344-45 (Fed. Cir. 2015) (en banc) (petition for en banc rehearing granted to consider whether certain acts were covered by 19 U.S.C. § 1337). In particular, both the Federal Rules of Appellate Procedure and our Internal Operating Procedures (“IOPs”) provide that en banc review is available for cases that involve “a question of exceptional importance.” Fed. R. Arr. P. 35(a)(2); IOP 13(2)(b). Additionally, our IOPs provide that “maintaining uniformity of decisions” is an appropriate basis to grant rehearing en banc. IOP 13(2)(a).
The interpretation of the statutory language “a patent that claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service,” Leahy-Smith America Invents Act (“AIA”), Pub. L. No. 112-29, § 18(d)(1), 125 Stat. 284, 329-31 (2011),[1] presents an enbancable issue. There may be many patents whose identity as a CBM patent either will be at issue during the life of this statutory provision in proceedings before the Board, or would have been at issue under the correct statutory interpretation. A subsidiary issue is whether “a financial activity element” must appear in a claim of the patent in order for a claimed process to qualify as a CBM patent. If it must, then this ease illustrates how the intent of Congress to provide for special examination of CBM patents can be subverted by an unduly limited interpretation of the statute.
As we have recognized, concerns “regarding litigation abuse over business method patents ... caused Congress to create a special program for these patents in the first place.” Versata Dev. Grp., Inc. v. SAP Am., Inc., 793 F.3d 1306, 1325 (Fed. Cir. 2015), cert. denied, — U.S. —, 136 S.Ct. 2510, 195 L.Ed.2d 841 (2016). To avoid “expensive litigation” over invalid patents, Congress created CBM review to be an “inexpensive and speedy alternative to litigation — allowing parties to resolve these disputes more efficiently rather than spending millions of dollars in litigation costs.” Ltr. From Rep. Smith, Chairman of the House Judiciary Comm., to Sens. Kyl, Schumer, Leahy, and Grassley, dated Sept. 8, 2011, reprinted in 157 Cong. Rec. S7413-02 (daily ed. Nov. 14, 2011) [hereinafter Rep. Smith Ltr.]; see also 157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer) (“The [CBM program] is designed to provide a cheaper, faster alternative to district court litigation over the validity of business-method patents. This program should be *1005 used instead of, rather than in addition to, civil litigation.”). Congress intended for the CBM program “to be construed as broadly as possible” to allow the PTO “to correct egregious errors that were made in the granting of a wide range of business method patents.” Rep. Smith Ltr.; see also 157 Cong. Rec. S1364-65 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer).
The panel majority’s interpretation severely limiting what constitutes a CBM patent under AIA § 18 and what may be considered in making that determination clearly frustrates Congress’s intent in establishing CBM review. The Patent Trial and Appeal Board (“the Board”) has had to apply the panel majority’s incorrect statutory interpretation in denying institution of CBM reviews. See, e.g., Ford Motor Co. v. Versata Dev. Grp., Inc., CBM2016-00100, slip op. at 2, 2017 WL 1087387 (P.T.A.B. Mar. 20, 2017) (Turner, APJ., concurring) (“Because of Secure Axcess ... we cannot interpret what may be explicitly absent from independent claims by looking to the written description. Thus, even though independent claims ... are sufficiently broad to cover their use with financial products, and the clear intent was for them to be applied to financial products, they cannot render the ’825 patent to be subject to a covered business method patent review.”); Twilio Inc. v. Telesign Corp., CBM2016-00099, slip op. at 13 (P.T.A.B. Feb. 27, 2017) (explaining “our focus is on what the ’792 patent claims, not solely the exemplary embodiments described in the Specification, some of which are related to finance and some of which are not” (citing Secure Axcess, 848 F.3d at 1379-80)); see also Br. of the Clearing House Payments Co., L.L.C. & Fin. Servs. Roundtable at 4-6, Secure Axcess, LLC v. PNC Bank Nat’l Ass’n, No. 16-1353 (Fed. Cir. Apr. 20, 2017), ECF No. 150 [hereinafter Clearing House Amicus Br.].
Additionally, patent owners have selectively disclaimed dependent claims that on their face seem to include “a financial activity element” to avoid CBM institution. See, e.g., Ford, slip op. at 2 (Turner, APJ., concurring) (“Had [dependent] claim 5 not been disclaimed, it is readily apparent that claim 5 would have been found to be a [CBM].”); Twilio, slip op. at 2, 9; Clearing House Amicus Br. at 6-8. As an amicus points out, “[although a broader independent claim and its narrower dependent claims both necessarily cover the financial product or service [covered by the dependent claims], now an artful drafter may eliminate the narrower claims (or the ‘financial activity element[s]’ that they recite) to dodge CBM review.” Clearing House Amicus Br. at 7 (third alternation in original). Thus, despite the panel majority’s assurance that “the phrasing of a qualifying claim does not require particular talismanic words,” Secure Axcess, 848 F.3d at 1381, the practical effect of its holding promotes that result. Such a result “elevate[s] form over substance” and allows “[c]lever drafting” to “avoid PTO review under [the CBM provisions]” in contravention of congressional intent. 157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer).
For at least these reasons, the fact that CBM review is currently set to sunset on September 16, 2020, AIA § 18(a)(3), does not diminish the current importance of this issue. Congress may “extend[] or mak[e] permanent [the CBM] program in the future.” See Rep. Smith Ltr. Because we generally do not have authority to review Board decisions denying institution of CBM review, see Versata, 793 F.3d at 1315 (explaining “we are not here called upon to review the determination by the PTAB whether to institute a CBM review, and indeed the statute expressly instructs that we may not” (citing 35 U.S.C. § 324(e))), it was especially important that we correct *1006 this erroneous statutory interpretation now.
Moreover, the availability of inter partes review (“IPR”) and post grant review (“PGR”) does not support denying en banc rehearing in this case. CBM review permits validity challenges to issued patents that are not available in an IPR, e.g., pursuant to §§ 101, 112. Compare AIA § 18(a)(1), with 35 U.S.C. § 311(b). Although CBM review and PGR permit the same types of validity challenges, AIA § 18(a)(1), only patents that have a claim with a priority date on or after March 16, 2013 are subject to PGR, id. §§ 3(n)(l), 6(f)(2)(A). Additionally, a petition for PGR must be filed within nine months of the patent’s grant or reissuance. 35 U.S.C. § 321(c). Thus, PGR is not available for the majority of patents about which Congress expressed specific concern in creating CBM review, i.e., “poor business-method patents” that issued “during the late 1990’s through the early 2000’s.” H.R. REP. 112-98, at 54 (2011), reprinted in 2011 U.S.C.C.A.N. 67, 84; see also 157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) (statements of Sens. Pryor, Leahy, and Schumer).
Regarding the specifics of this case, the panel determined that the patent at issue was not a CBM patent and that the Board therefore erroneously reviewed its validity under the CBM provisions of the AIA. I submit this was incorrect, and the result of that decision frustrates the clear intent of Congress in enacting the CBM portion of the AIA.
The statute defines a CBM patent as “a patent that claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service, except that the term does not include patents for technological inventions.” AIA § 18(d)(1). The claims of the T91 patent are surely claims to “a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service.” Id. (emphasis added).
Claim 1 recites “[a] method comprising: transforming ... received data ... to create formatted data....” T91 patent col. 12 11. 9-18. Claim 17 recites “[a]n authentication system comprising: an authentication processor configured to insert an authenticity key into formatted data to enable authentication of the authenticity key to verify a source of the formatted data....” Id. col. 12 11. 62-67. There can be little doubt that such claims meet the “method or corresponding apparatus for performing data processing” limitation of the statute.
They also satisfy the “used in the practice, administration, or management of a financial product or service” language of the statute. Examination of the ’191 patent makes clear that the invention is to be used in the management of a financial service. The exemplary embodiment is described, inter alia, as follows:
The customer and merchant may represent individual people, entities, or business. The bank may represent other types of card issuing institutions, such as credit card companies, card sponsoring companies, or third party issuers under contract with financial institutions .... The bank has a computing center shown as a main frame computer. However, the bank computing center may be implemented in other forms, such as a mini-computer, a PC server, a network set of computers, and the like.... Any merchant computer and bank computer are interconnected via a second network, referred to as a payment network. The payment network represents existing proprietary networks that presently accommodate *1007 transactions for credit cards, debit cards, and other types of financial/banking cards. The payment network is a closed network that is assumed to be secure from eavesdroppers. Examples of the payment network include the American Express®, VisaNet® and the Veriphone® network. In an exemplary embodiment, the electronic commerce system is implemented at the customer and issuing bank. In an exemplary implementation, the electronic commerce system is implemented as computer software’ modules loaded onto the customer computer and the banking computing center. The merchant computer does not require any additional software to participate in the online commerce transactions supported by the online commerce system.
Id. col. 11 ll. 22-67. Similarly, the ’191 patent uses “bigbank.com” as the only exemplary URL. Id. col. 1 11. 29-33, col. 8 11. 21-23. No other applications of the invention are described in the patent.
If there were any doubt of the use of the invention in financial management, the identity of the companies the patent owner has sued for infringement of the ’191 patent should settle the matter. See, e.g., 157 Cong. Rec S1365 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer) (“[I]f a patent holder alleges that a financial product or service infringes its patent, that patent shall be deemed to cover a ‘financial product or service’ for purposes of this amendment regardless of whether the asserted claims specifically reference the type of product [or] service accused of infringing.”). Their litigation pattern speaks volumes about what they believe their invention is “used” for. Secure Axcess filed complaints alleging that numerous companies infringe the ’191 patent by “using” the invention.
Moreover, at oral argument before the panel, Secure Axcess’s counsel, in response to a question, stated that no companies have been sued other than financial institutions. Oral Argument at 7:15-7:30, Secure Axcess, LLC v. PNC Bank N.A., No. 16-1353 (Fed. Cir. Nov. 2, 2016), available at http://www.cafe.uscourts.gov/oral-argument-recordings?title=& fielcLcase_number_value=20161353& field_date_value2$val-ue)$date)=&=Search.
Additionally, indicating the importance of this issue, we have received amicus briefs, including from organizations that represent the interests of financial entities, urging us to rehear the panel’s decision en banc. These financial entities obviously know that this patent is a CBM patent. No amicus briefs were received arguing against rehearing.
The patent at issue here clearly is a patent claiming methods and apparatuses used in the practice of a financial product or service. The written description of the T91 patent, in accordance with the requirements of the statute, see 35 U.S.C. § 112, tells us that the invention is to be used for financial management. See T91 patent col. 11 11. 22-67; see also id. col. 111. 29-33, col. 8 11. 21-23. The inventors, complying with the statute, 35 U.S.C. § 112, thus told us what the invention is to be used for. The claims recite an invention used in the practice of a financial product, and the uses are described in the written description of the patent. The panel majority’s interpretation of the statute, which a majority of the court has determined not to review en banc, flies in the face of that plain fact.
The fact that a “financial activity element” does not appear in the claim does not mean that the patent is not used in the practice of a financial service. CBM patents are not even limited to financial ser *1008 vices products and services. See Versata, 793 F.3d at 1325 (holding that “the definition of ‘covered business method patent’ is not limited to products and services of only the financial industry, or to patents owned by or directly affecting the activities of financial institutions”); see also Blue Calypso, LLC v. Groupon, Inc., 815 F.3d 1331, 1338 (Fed. Cir. 2016) (affirming the Board’s decision “declinfing] to limit application of CBM review to patent claims tied to the financial sector”); id. at 1339 n.2 (explaining the Board correctly concluded that claims referring to “an incentive program” were eligible for CBM review where the patent “repeatedly, and almost exclusively discloses ‘incentive’ and ‘incentive program’ in a financial context”) (internal citation omitted); SightSound Techs., LLC v. Apple Inc., 809 F.3d 1307, 1315 (Fed. Cir. 2015) (explaining Versata “foreclosed” limiting the CBM patent definition to patents “directed to the management of money, banking, or investment or credit”).
Although the statute states “a patent that claims,” this does not suggest that the reference to the financial product or service has to be in the claim language itself, rather than in the specification. Requiring financial language to be in the claims is inconsistent with the legislative background of this provision. “This section grew out of concerns originally raised ... about financial institutions’ inability to ... clear checks electronically ... without infringing the so-called Ballard patents, patents number 5,910,988 and 6,032,137.” 157 Cong. Rec. S1379 (daily ed. Mar. 8, 2011) (statement of Sen. Kyi). The majority opinion would hold that the independent claims of one of these Ballard patents, U.S. Patent No. 5,910,988, do not fall under CBM review because they make no reference to financial products or services.[2] See also 157 Cong. Rec. S5432 (daily ed. Sept. 8, 2011) (statement of Sen. Schumer: “Even the notorious ‘Ballard patents’ do not refer specifically to banks or even to financial transactions.”).
Finally, as a matter of patent law, claims do not necessarily need to recite uses of products. Certainly, claims to products or apparatus do not, and AIA § 18(d)(1) refers to a “method or corresponding apparatus.” If a method claim otherwise satisfies the requirements of 35 U.S.C. § 112, it need not recite an ultimate use.
In my view, the Board correctly concluded that the “method and apparatus claimed by the ’191 patent per-form operations used in the practice, administration, or management of a financial product or service,” in accordance with the CBM patent statutory definition. PNC Bank, N.A. v. Secure Axcess, LLC, CBM2014-00100, 2015 WL 5316490, at *5 (P.T.A.B. Sept. 8, 2015). It is true that the Board also used overly broad language in stating in the alternative that the “method and apparatus claimed by the ’191 patent ... are incidental to a financial activity,” id. (emphasis added), and that “the ’191 patent claims a method or apparatus that at least is incidental to a financial activity, even if other types of companies also practice the claimed invention.” Id. at *6. However, overstatement does not change the basic fact that, as the written description of the patent itself indicates, the invention is directed to a method and apparatus used in financial management, as referred to in the statute. See, e.g., Blue Calypso, 815 F.3d at 1339 n.2.
*1009 The panel majority disparaged the clear use of this invention in the practice of a financial product or service by worrying that the CBM program would have “virtually unconstrained reach” and that “a patent would qualify [for CBM review] if it claimed a method or corresponding apparatus for performing any operations that happen to be used in ‘the practice, administration, or management of a financial product or service.’ ” Secure Axcess, 848 F.3d at 1379 (emphasis in original). The answer to such concerns is that we need not probe the limits of the statutory language by reciting all sorts of non-financial products to show that a sensible interpretation of this statute must include what Secure Axcess itself considers to be a financial product. Common sense is not precluded from use in interpreting statutes and claims. See Price Waterhouse v. Hopkins, 490 U.S. 228, 241, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (“We need not leave our common sense at the doorstep when we interpret a statute.”). I agree that the subject matter of the claim must have a particular relation to a financial product or service, and not merely be an incidentally-used invention like a lightbulb or ditch-digging. Cf. Unwired Planet, LLC v. Google, Inc., 841 F.3d 1376, 1382 (Fed. Cir. 2016).
Moreover, the statutory language itself places limits on the definition of a CBM patent that the panel majority largely ignores. The definition expressly excludes “patents for technological inventions,” AIA § 18(d)(1), although this issue was not decided by the panel in this case.
Additionally, the definition may be further limited by the sensible application of statutory canons of construction. For example, the panel majority’s concern regarding the potential breadth of “other operations” in the statute may be alleviated by application of canons of statutory construction such as noscitur a sociis and ejusdem generis. See e.g., Washington State Dep’t of Soc. & Health Servs. v. Guardianship Estate of Keffeler, 537 U.S. 371, 384, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003) (“[Ujnder the established interpretative canons of noscitur a sociis and ejus-dem generis, ‘[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.’ ” (quoting Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 114-15, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) (second alteration in original))); Jarecki v. G. D. Searle & Co., 367 U.S. 303, 307, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961) (“The maxim noscitur a sociis, that a word is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress.”). The statute here specifies “data processing or other operations used in ... a financial product or service,” AIA § 18(d)(1) (emphasis added), so that inventions that are widely different from these are not likely to be improperly caught by this language.
I therefore respectfully dissent from the court’s denial to rehear this case en banc. I would hold that applying the correct statutory interpretation, the ’191 patent is a CBM patent because it claims methods and systems used in the practice of a financial product, as indicated by the written description, notwithstanding that a “financial activity element” does not appear in the claims.

. Section 18 of the AIA, pertaining to CBM review, is not codified. References to AIA §§ 3, 6, and 18 herein are to the statutes at large.

. To be sure, four dependent claims (out of the fifty total claims) refer to “credit cards” in U.S. Patent No. 5,910,988. The PTO guidelines now indicate that a patent is CBM-eligible as long as one of its claims is CBM-eligible. See 77 Fed. Reg. 48736. However, there is no suggestion that this type of subtlety was the basis for which the notorious Ballard patents were CBM-eligible.